IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**MICHAEL BLANKENSHIP,**

    **Movant,**

v.                                                  **Case No. 5:20-cv-00037**
                                                    **Criminal Case No. 5:17-cr-00200**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant Michael Blankenship's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 113). This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned has thoroughly reviewed the record and the arguments of the parties. For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Blankenship's motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Blankenship is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

I.  **Factual and Procedural Background**

A.  *Indictment, Trial, Conviction, and Sentencing*

The Federal Water Pollution Control Act, also known as the Clean Water Act (CWA), prohibits the discharge of any pollutant by any person into waters of the United States without a permit. 33 U.S.C. § 1311. Blankenship ran Hanover Contracting Company, LLC, which cleaned portable toilets and hauled and disposed of domestic sewage. (ECF No. 126 at 1).[1] Blankenship operated the business from his home in Wyoming County, West Virginia, near Little Huff Creek. (*Id.*). In response to a complaint that sewage waste was being discharged into Little Huff Creek from a truck on Blankenship's property, investigators from the West Virginia Department of Environmental Protection (WVDEP) began an investigation into Blankenship's conduct. (*Id.* at 2).

As a result of the investigation, on November 16, 2017, Blankenship was indicted on eleven counts of felony violations of the CWA. He was appointed counsel to represent him, Federal Public Defender Christian Capece and, later, Assistant Federal Public Defender Lorena Litten. (ECF Nos. 3, 21). Following a two-day jury trial, on April 18, 2018, Blankenship was convicted of two counts of felony violations of the CWA, Counts 4 and 9 of the indictment, and was acquitted of the remaining nine counts. (ECF No. 70).

Upon Blankenship's conviction, a U.S. Probation Officer prepared a Presentence Investigation Report, which detailed, *inter alia*, Blankenship's conduct related to the offenses for which he was convicted, his personal and criminal history, and applicable sentencing guidelines under the United States Sentencing Guidelines (USSG). (ECF No.

---

[1] All citations to the record refer to documents filed in Blankenship's underlying criminal case, No. 5:17-cr-00200.

97). In the interim period between Blankenship's conviction and sentencing, one of the attorneys appointed to represent him, Christian Capece, completed his term as Federal Public Defender and ended his representation in Blankenship's case. (ECF Nos. 84, 126 at 3). Assistant Federal Public Defender Lorena Litten continued to represent Blankenship and appeared with him at his sentencing hearing. (ECF No. 91). On January 17, 2019, Blankenship was sentenced to 15-months' imprisonment, followed by one year of supervised release, and was issued a $10,000 fine and $200 special assessment. (ECF Nos. 91, 94).

### B. *Appeal to the Fourth Circuit and Writ of Certiorari*

On January 30, 2019, Blankenship filed an appeal of his convictions to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). (ECF No. 98). In the appeal, Blankenship argued that three evidentiary rulings by the District Court were erroneous, and that the Court incorrectly refused to offer a jury instruction on the lesser-included offense of negligent dumping. (ECF No. 107). On October 1, 2019, the Fourth Circuit affirmed the judgment of the District Court by *per curiam* opinion. (*Id.*). Thereafter, Blankenship filed a petition for a writ of certiorari to the Supreme Court of the United States. (ECF No. 112). On February 24, 2020, the petition was denied. (ECF No. 117).

### C. *Motion for Habeas Corpus*

On January 15, 2020, Blankenship filed the instant motion for habeas corpus relief under 28 U.S.C. § 2255. (ECF No. 113). He alleges eight grounds in support of his motion, contending that his counsel was ineffective by failing to: (1) challenge the CWA as unconstitutional; (2)-(5) object to a number of evidentiary matters, (6) challenge the charges based on the dictionary definition of "pollutant," (7) object to the Government's

3

closing argument at trial, and (8) file a motion that Blankenship's business be indicted on the charges rather than Blankenship himself. (*Id.*). Blankenship requests that this Court overturn his convictions under Counts 4 and 9 of the indictment. (*Id.* at 29).

Blankenship's counsel submitted an affidavit on May 26, 2020, addressing each ground Blankenship presented and explaining the reasons why they had declined to take the actions described by Blankenship in his motion. (ECF No. 126). On July 10, 2020, the United States responded to Blankenship's motion. (ECF No. 127). The Government's response, addressing each of Blankenship's alleged grounds and relying on the affidavit submitted by Blankenship's counsel, opposes his motion and concludes that Blankenship "received outstanding representation by capable and effective attorneys." (*Id.* at 16). On September 8, 2020, Blankenship replied to the Government's opposition. (ECF No. 130). In his reply, Blankenship reiterates the arguments alleged in his original motion and thoroughly addresses the distinguishing facts of one case in particular, *United States v. Strandquist*, 993 F.2d 395 (4th Cir. 1993), upon which the United States relied for its contention that lay testimony concerning the smell of sewage was admissible. (*Id.* at 16–21). He again requests that this Court vacate or set aside his convictions. (*Id.* at 23).

II. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to

4

establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 motion may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

### III.   **Discussion**

Blankenship's motion alleges eight grounds to support his contention that his counsel was ineffective. Claims such as these assert violations of the Sixth Amendment to the United States Constitution, which guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id* at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). A counsel's trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to *incompetence* under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011) (emphasis added).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed … by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S. Ct. at 787)); *see also, Strickland,* 466 U.S. at 687. It is insufficient for

6

the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The eight grounds Blankenship raised as alleged deficiencies in his counsel's representation can be divided into two basic categories: failure to challenge the CWA's application to his conduct (Grounds 1, 6, and 8) and failure to object to or move to exclude certain evidence (Grounds 2–5 and 7). (ECF No. 113). In order to fully address Blankenship's allegations, the grounds within each category are discussed in turn below.

### A. *Counsel's Failure to Challenge the CWA's Application*

In Ground 1, Blankenship argues that counsel was ineffective because they did not move to dismiss the charges in the indictment on the basis that the CWA is unconstitutional as it applies to his conduct. (ECF No. 113 at 4–5). He claims that because he could not have obtained a permit to discharge sewage into the creek, it is unconstitutional to punish him for doing so without a permit. (*Id.* at 6). As he explains, it would be erroneous to indict someone on a charge of punching someone in the face without a permit, because there are no face-punching permits available. (*Id.*). Blankenship further asserts that had counsel moved to dismiss on this basis, "no reasonable judge would have allowed these particular charges to go forward." (*Id.* at 6).

The flaw in Blankenship's argument is apparent. The CWA prohibits "the discharge of any pollutant by any person" unless the person discharging meets certain requirements under the statute, including holding a valid permit. 33 U.S.C. § 1311. The statute as written

7

sets forth the blanket rule (no discharges) and carves out an exception (unless permitted). Blankenship believes the statute must *allow* all discharges without a permit *except* those for which a permit could be obtained and, thus, punishing him for failing to secure an unobtainable permit for his discharges is unconstitutional. This argument is unavailing. There is no constitutional right to discharge pollutants into creeks, and Congress chose to prohibit such discharges entirely unless the polluter holds a valid permit. While the statute's meaning is plain on its own terms, Blankenship's counsel also points out in their affidavit, (ECF No. 126 at 4), and the United States notes in its response, (ECF No. 127 at 5), that the Fourth Circuit has made clear that a polluter may be held criminally liable under the CWA for "a discharge for which the polluter could not have obtained *any* permit." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 642 (4th Cir. 2018), *cert. granted, rev'd on other grounds*, 140 S. Ct. 2736 (2020). Because the failure of Blankenship's counsel to move for a dismissal on this basis was neither unreasonable nor prejudicial, the undersigned **FINDS** that Blankenship is not entitled to relief under § 2255 on this ground.

In Ground 6, Blankenship argues that his counsel was deficient because they failed to make a motion to dismiss based on the lack of testimony that the sewage he was convicted of dumping in Little Huff Creek was a "pollutant." (ECF No. 113 at 20–21). According to Blankenship, Black's Law Dictionary's defines a pollutant as a "noxious" substance, a quality the United States did not address in its case. (*Id.* at 21). As he explains, sewage is commonly found in soil and streams across the nation and is even used as a fertilizer, and it was not classified as noxious by any government employee investigating his conduct. (*Id.*). This ground for relief is also without merit.

The term "pollutant," as used in 33 U.S.C. § 1311, is defined in the CWA. 33 U.S.C. § 1362(6). Congress expressly included "sewage" and "sewage sludge" in the statutory definition of a pollutant. *Id.* Black's Law Dictionary, while helpful for some purposes, is a privately published reference source and does not supersede the will of Congress. Consequently, the United States did not need to prove that what Blankenship discharged into the water was noxious; it only needed to show that he discharged a pollutant as defined by the CWA. As a result, Blankenship's counsel had no basis whatsoever to challenge the application of the term "pollutant" to the sewage Blankenship dumped in Little Huff Creek. Because it was neither unreasonable nor prejudicial to fail to file a motion to dismiss on this ground, the undersigned **FINDS** that Blankenship's counsel was not ineffective in declining to do so.

In Ground 8, Blankenship alleges that his counsel was ineffective, because they did not move to dismiss the charges against him on the basis that his business, an LLC, should have been indicted rather than him personally. (ECF No. 113 at 25). This argument must fail given the CWA's definition of a person who can be held criminally liable for illegal discharges of pollutants. As the United States correctly notes, "an individual" as well as a business organization, may be indicted for crimes under the CWA. (ECF No. 127 at 15); 33 U.S.C. 1362(5). While the United States might have chosen to indict Blankenship's business, along with or instead of Blankenship, it was not required to do so. The CWA does not contain any provision requiring the Government to charge a polluter's business for the polluter's conduct, and on many occasions the United States has chosen to prosecute individuals. *See, e.g., United States v. Hillyer*, 457 F.3d 347 (4th Cir. 2006); *United States v. Cooper*, 482 F.3d 658 (4th Cir. 2007); *United States v. Deaton*, 209 F.3d 331 (4th Cir. 2000). Accordingly, Blankenship's counsel had no basis to challenge the

indictment under this theory. Because it was neither unreasonable nor prejudicial to fail to move to dismiss, the undersigned **FINDS** that Blankenship is not entitled to relief on this ground.

### B. *Counsel's Failure to Object to Admission of Evidence*

In Grounds 2 and 4, Blankenship contends that his counsel was ineffective by failing to file a motion to suppress evidence obtained in violation of his rights under the Fourth Amendment; in particular, evidence collected on September 29, 2015 during the WVDEP's warrantless search made in response to an anonymous complaint. (ECF No. 113 at 7–10, 15–16). The legal and factual assertions under both grounds are nearly identical, so they will be addressed together.

As established at trial, WVDEP inspectors drove to Blankenship's property to investigate an anonymous email complaint of sewage being dumped into Little Huff Creek near Hanover. (ECF No. 113-3 at 3). Upon arrival, the inspectors noticed a septage hauler parked on a concrete pad with a hose running from the back of the truck down a slope to the creek. (*Id.* at 4). The inspectors took photographs, and then, believing they were witnessing the discharge of untreated septage into Little Huff Creek, left the scene to contact law enforcement to accompany them back to the property. (*Id.* at 7–8). Upon returning with law enforcement, the inspectors noticed that the hose had been disconnected from the truck and the truck had been moved, although some septage material remained on the back of the truck. (*Id.* at 15–16). After receiving permission from one of Blankenship's employees, the inspectors took a sample from the valve of the truck and another from the concrete pad. (*Id.* at 16, 28). The photos and samples obtained during the search were admitted into evidence at trial in support of the charges against Blankenship.

In their affidavit, Blankenship's counsel thoroughly explained why, after visiting the location of the search, studying the circumstances and relevant law, and consulting with colleagues, they determined there was no basis to object to the evidence and elected not to file a motion to suppress the evidence. (ECF No. 126 at 5–9). With respect to the sample taken from the truck, Blankenship's counsel determined that it would fall into the "automobile exception," for warrantless searches and was therefore admissible. (*Id.* at 6); *see also Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013). The truck was indeed readily mobile. As Respondent notes, the truck had obviously been moved at some point in the brief period when the WVDEP inspectors left the property to summon law enforcement. (ECF No. 127 at 8). Blankenship's counsel believed the investigators had probable cause, as well, because they had seen the hose attached to the truck and leading down into the creek. (ECF No. 126 at 7). Therefore, counsel concluded, the automobile exception applied to the search of the truck, and a motion to suppress the evidence would have failed. (*Id.*).

In his reply, Blankenship takes issue with his counsel's and Respondent's conclusion that the truck was "readily mobile" just because it had been moved recently. (ECF No. 130 at 6–7). He is critical of the manner in which the investigation was handled, insisting that there were other explanations for what the investigators saw, and that they should have launched a stake-out if they believed they would witness a crime. (*Id.* at 9). However, this Court need not ponder the myriad innocent reasons a hose attached to a septage hauler might be fed into a creek, nor contemplate the alternative methods by which the WVDEP may have conducted its investigation. The task before the Court is to

11

determine if, pursuant to *Strickland*, it was objectively unreasonable and actually prejudicial for Blankenship's counsel to decline to object to the evidence gathered in the search. Although this Court need not rule on the admissibility of the evidence, the record supports counsel's conclusion, and therefore the undersigned **FINDS** that it was not objectively unreasonable or prejudical to fail to file a motion to suppress.

Likewise, counsel determined that the sample taken from the concrete pad where the truck was parked was not obtained in an unconstitutional search. (ECF No. 126 at 7–9). After reviewing the relevant case law, counsel concluded that the concrete pad, though on Blankenship's property, was not in his "curtilage," which is the land immediately surrounding and associated with the home. (*Id.* at 8); *Oliver v. United States*, 466 U.S. 170, 180 (1984). Therefore, Counsel determined, the concrete pad did not have an expectation of privacy protected by the Fourth Amendment and there was no basis for a motion to suppress the sample taken from the concrete pad. (ECF No. 126 at 8–9). As above, this Court need not rule on the accuracy of counsel's assessment, but rather on its objective reasonableness. Here, where the concrete pad is separate from Blankenship's home and is used for business purposes, (*id.*), it was not unreasonable for counsel to determine that the search did not violate Blankenship's Fourth Amendment rights. Therefore, the undersigned **FINDS** that Blankenship is not entitled to relief under Grounds 2 and 4 of his § 2255 motion.

In Ground 3, Blankenship contends that his counsel was ineffective because they failed to object to trial testimony from three government agents, who stated that Blankenship had admitted to them that he had dumped pollutants in the creek. (ECF No. 113 at 12–14). Blankenship characterizes the statements of Mark Bolling, Hugh Mallet, and Nicholas Gillispie as hearsay to which his counsel should have objected. (*Id.*).

Hearsay, which is a statement made out of court that is offered to prove the truth of the matter asserted in the statement, is generally inadmissible under the Federal Rules of Evidence. Fed. R. Evid. 801(c); Fed. R. Evid. 802. However, there are exceptions to the hearsay rule. As both Blankenship's counsel and Respondent attest, the agents' testimony about Blankenship's statements fall into a notable exception to the hearsay rule. (ECF Nos. 126 at 10, 127 at 9). When a trial witness for the prosecution testifies about statements made by the defendant, the testimony is not considered to be hearsay. Fed. R. Evid. 801(d)(2). The agents, who served as witnesses for the prosecution, testified about statements Blankenship made to them during the course of their investigation. As such, their testimony was not hearsay. Accordingly, it was not objectively unreasonable or prejudicial for Blankenship's counsel to decline to object to their testimony, and the undersigned **FINDS** that Blankenship is not entitled to relief on this ground.

In Ground 5, Blankenship alleges that his counsel was ineffective because they failed to object to the testimony of his neighbor, Denver Lester, who claimed he could identify the material being discharged into Little Huff Creek as sewage by its odor, and when asked how he knew it was sewage, testified that his "nose don't lie." (ECF No. 113 at 18–19). Blankenship claims that Lester, a layperson, was testifying as an expert when he claimed to smell the sewage being dumped in the creek from some distance away, and that no medical evidence was offered as to Lester's olfactory capabilities. (*Id.* at 19). Furthermore, Blankenship points out, there was no evidence presented that Lester had served as an olfactory sense expert witness in any other court proceeding. (*Id.*). Blankenship further argues that a reasonable attorney would have objected to the testimony and a reasonable judge would have sustained the objection, and counsel should

13

have requested a *Daubert* hearing to determine if Lester was a qualified expert. (ECF No. 130 at 16).

In their affidavit, Blankenship's counsel contend that they saw no reason to object to Lester's testimony, because the smell of sewage or fecal matter is not a determination that requires "scientific, technical, or other specialized knowledge," therefore making it appropriate lay testimony. (ECF No. 126 at 12); Fed. R. Evid. 701(c). The United States likewise disputes Blankenship's claim that Lester was testifying as an expert. (ECF No. 127 at 11). It argues that the testimony provided by Lester was permissible lay testimony because it was based on his perception, which includes smell. (ECF No. 127 at 11); Fed. R. Evid. 701(a). The United States cites a Fourth Circuit case, *United States v. Strandquist*, in which lay testimony concerning the smell of sewage was used as evidence for conviction for illegal discharge. (ECF No. 127 at 11); 993 F.2d 395, 397–98 (4th Cir. 1993).

In reply, Blankenship highlights the purported factual distinctions between the investigation conducted in *Strandquist* and his own case. (ECF No. 130 at 17–21). While thorough, his explanation of the dissimilitude in the cases does not bear on the appropriateness of Lester's lay testimony. Sewage is not an especially uncommon smell and, like many people, Lester is likely familiar with it, especially given that, as Blankenship puts it, "[o]ne would expect to smell [expletive] when they reside next to a sewage company." (ECF No. 113 at 19). Regardless, it was up to the jury to determine the credibility of Lester's testimony and consider it accordingly. It is obvious that, in context, Lester's statement that his "nose don't lie" is a polite colloquialism indicating the readily identifiable nature of sewage odor and not a claim that he is an olfactory expert. Therefore, as it was not objectively unreasonable nor prejudicial for Blankenship's counsel to fail to object to his testimony or request a hearing on Lester's ability to testify

as an expert, the undersigned **FINDS** that Blankenship is not entitled to relief on this ground.

Finally, in Ground 7, Blankenship alleges his counsel was ineffective because they failed to object to the Government's closing argument at trial. (ECF No. 113 at 22–23). Blankenship claims that the argument put forth by the United States, which concluded that there was sewage in the hose leading from Blankenship's truck to the creek, was not supported by the evidence presented to the jury as no samples were taken from the hose or presented at the trial. (*Id.* at 23). According to Blankenship, the lack of "100%" proof of sewage in the hose meant that there was reasonable doubt as to his guilt, and it was "extremely harmful to Blankenship" for the United States to tell the jurors otherwise. (*Id.*).

As is typical in a closing argument at a criminal trial, the Government pointed the jury to the evidence and urged the jurors to convict Blankenship of the offenses for which he was charged. (ECF No. 80 at 177–83). The Government's evidence—*inter alia*, photographs, sworn testimony, and samples from the truck valve and concrete pad—were properly admitted evidence which the United States used to convince the jury of Blankenship's guilt. The fact that the Government did not present direct forensic evidence in the form of samples from the hose does not lead to the conclusion propounded by Blankenship—that *no* evidence had been presented upon which the jury could reasonably infer that raw sewage had been discharged through the hose. "[C]ircumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." *United States v. Pittman*, 696 F. App'x 609, 614 (4th Cir. 2017) (quoting *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989).

In their affidavit, Blankenship's counsel maintained that they found no basis to object to the Government's closing argument as the Government did not misstate the evidence. (ECF No. 126 at 14). The United States also emphasizes that Blankenship's counsel argued that the jury should acquit Blankenship because the lack of water samples cast a reasonable doubt on his guilt. (ECF No. 127 at 14–15). It is the jury, not the United States, that must adduce whether a reasonable doubt exists after weighing the evidence presented to it and the arguments of both the Government and the defense. As it was neither objectively unreasonable nor prejudicial for Blankenship's counsel to fail to object to the Government's closing statement, the undersigned **FINDS** that Blankenship is not entitled to relief on this ground, and further **FINDS** that Blankenship's counsel was not constitutionally deficient in their representation.

### IV.  Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the presiding district judge confirm and accept the foregoing findings and **RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 113), be **DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed

Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** October 5, 2020

Cheryl A. Eifert
United States Magistrate Judge